THE CONNECTICUT WATER COMPANY *v.*
ROLAND BEAUSOLEIL
(12969)

PETERS, C. J., HEALEY, SANTANIELLO, DUPONT and HADDEN, Js.

Argued February 2—decision released June 9, 1987

*Carla R. Walworth,* with whom, on the brief, was *Dean M. Cordiano,* for the appellant (plaintiff).

*Kevin T. Nixon,* for the appellee (defendant).

DUPONT, J. The primary issue in this appeal is whether the trial court erred in rendering a summary judgment in favor of the defendant on the ground that the doctrine of res judicata precluded the plaintiff's action for damages when the plaintiff had previously participated in an administrative action against the defendant. The resolution of two subsidiary issues is determinative of whether summary judgment should have been granted. The issues are: (1) whether the scope of the prior administrative enforcement action brought in the Superior Court permitted the plaintiff, as an intervening party, to seek the damages he now claims; and (2) whether a stipulated judgment rendered pursuant to a motion for stipulated judgment signed by the parties in the prior administrative enforcement action encompassed the damages the plaintiff now claims. We find error.

The action which is the subject of this appeal is one for damages in which the plaintiff claims that the defendant maintained a private nuisance and negligently and intentionally permitted the contamination of the plaintiff's reservoir which is part of a public water supply system. The plaintiff's complaint alleges that it owns and operates Moody Reservoir and that the defendant owns land being developed as a residential subdivision. The complaint further alleges that, in connection with the development, the defendant engaged in activities which caused extensive soil erosion and caused a brook on the defendant's land to contain a silt-laden run-off. The brook feeds Moody Reservoir and the run-off has caused elevated color and turbidity levels in the reservoir.

The prior administrative action involved an order of the commissioner of the department of environmental protection (commissioner) which was previously issued to the defendant pursuant to the Water Pollution Control Act, General Statutes § 22a-432.[1] That order required the defendant to take necessary action to install and maintain erosion and siltation control measures on his land. The order contained a finding that the defendant was maintaining a facility "which rea-

---

[1] General Statutes § 22a-432 provides in pertinent part: "ORDER TO CORRECT POTENTIAL SOURCES OF POLLUTION. If the commissioner finds that any person . . . has created a condition . . . or is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he may issue an order to such person to take the necessary steps to correct such potential source of pollution. Any person who receives an order pursuant to this section shall have the right to a hearing and an appeal in the same manner as is provided in sections 22a-436 and 22a-437. If the commissioner finds that the recipient of any such order fails to comply therewith, he may request the attorney general to bring an action in the superior court . . . to enjoin such person from maintaining such potential source of pollution to the waters of the state or to take the necessary steps to correct such potential source of pollution. All actions brought by the attorney general pursuant to the provisions of this section shall have precedence in the order of trial . . . ."

sonably can be expected to create a source of pollution of the waters of the state" and contained specific measures and programs to be undertaken by the defendant, including a timetable for their completion.

The order further required the defendant to verify to the commissioner that construction of long term erosion and siltation control measures were completed and being maintained in accordance with an engineering report to be reviewed and approved by the commissioner. The order referred only to the defendant and his land and did not refer to the plaintiff or its reservoir. The defendant could have, but did not, seek a hearing before the commissioner to contest or modify the order as provided in General Statutes §§ 22a-432 and 22a-436.[2]

A suit for injunctive relief and compliance with the commissioner's order was brought against the defendant by the attorney general at the request of the commissioner as provided by General Statutes § 22a-435.[3]

[2] General Statutes § 22a-436 provides in pertinent part: "HEARING ON ORDER TO ABATE. Each order to abate pollution . . . shall be sent . . . to the subject of such order . . . . Any person who . . . is aggrieved by any such order . . . may, within thirty days from the date such order or decision is sent, request a hearing before the commissioner. The commissioner shall not grant any request for a hearing at any time thereafter. After such hearing, the commissioner shall consider the facts presented to him by the person . . . including, but not limited to, technological feasibility, shall consider the rebuttal or other evidence presented to or by him, and shall then revise and resubmit the order to the person . . . or inform the person . . . that the previous order has been affirmed and remains in effect. The request for a hearing as provided for in this section . . . shall be a condition precedent to the taking of an appeal by the person . . . under the provisions of section 22a-437. The commissioner may, after the hearing provided for in this section, or at any time after the issuance of his order, modify such order by agreement or extend the time schedule therefor if he deems such modification or extension advisable or necessary, and any such modification or extension shall be deemed to be a revision of an existing order and shall not constitute a new order. There shall be no hearing subsequent to or any appeal from any such modification or extension."

[3] General Statutes § 22a-435 provides in pertinent part: "INJUNCTION. If any person . . . fails to comply with any order to abate pollution, or

The complaint alleged that the commissioner had issued an order to the defendant requiring him to take specific measures to prevent pollution to Moody Reservoir, and that the defendant had failed to comply with the order. Pursuant to General Statutes §§ 22a-432 and 22a-435, a permanent injunction was sought to restrain the defendant from maintaining a potential source of pollution to the waters of the state. An order was also sought to require the defendant to forfeit to the state a sum not to exceed ten thousand dollars, to be fixed by the court, for each offense. General Statutes § 22a-438.

The plaintiff's motion to intervene in the Superior Court action as a party plaintiff was granted by the trial court. The motion claimed "an interest that the judgment in [the] action will affect, and it [the plaintiff] is directly interested in and may be affected by the granting of a temporary or permanent injunction . . . ."

The plaintiff filed no other pleading in the action, and sought no damages from the defendant for any damage to its reservoir. Judgment was rendered in accordance with a motion for stipulated judgment. The motion stated that the commissioner and the defendant stipulated to judgment, but was signed by the plaintiff as well as the defendant and an assistant attorney general for the commissioner, on October 3, 1984. In February, 1985, the defendant and the commissioner signed a consent decree.[4] The plaintiff, however, did not sign the decree.

any part thereof . . . and no request for a hearing on such order or appeal therefrom is pending and the time for making such request or taking such appeal has expired, the commissioner may request the attorney general to bring an action in the superior court . . . to enjoin such person . . . from maintaining such pollution and to comply fully with such order or any part thereof. All actions brought by the attorney general pursuant to the provisions of this section shall have precedence in the order of trial . . . ."

[4] The consent decree was not made part of the record on appeal, nor was it a part of the trial court record.

The stipulation provided that certain measures be taken by the defendant to prevent pollution and erosion. The stipulation did not mention the plaintiff's reservoir, and required no approval by the plaintiff of any work to be done by the defendant. Instead, it specifically provided that the defendant take remedial action which, "in the opinion of the Department of Environmental Protection, is adequate to prevent further erosion."

In the plaintiff's present action for damages, the trial court found that there was no question of fact relating to the intent of the parties in signing the motion for stipulated judgment, and held that the defendant was entitled to judgment as a matter of law because the plaintiff could have litigated the claim for relief of the present case in the prior case and not having done so, was barred from bringing a second action.

I

The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made. *Gagne* v. *Norton,* 189 Conn. 29, 32, 453 A.2d 1162 (1983). "Our rules of res judicata are based on the public policy that 'a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate.' " *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 363–64, 511 A.2d 333 (1986), citing *In re Juvenile Appeal (83–DE),* 190 Conn. 310, 318, 460 A.2d 1277 (1983). In order to resolve the question of whether the plaintiff, as an intervenor in the commissioner's administrative enforcement action against the defendant, could have sought monetary damages in that action, it is necessary to determine the scope of that action as provided by statute. See *Duhaime* v. *American Reserve Life Ins. Co.,* supra, 364.

Title 22a of the General Statutes is entitled "Environmental Protection." It contains various acts, all relating to the general purpose of the entire title. Sections 22a-1 through 22a-13 provide for the general state policy, create a department of environmental protection, and establish the duties and powers of its commissioner. The Environmental Protection Act is contained in General Statutes §§ 22a-14 through 22a-20. Sections 22a-1 through 22a-20 are important to an understanding of the scope of judicial review to be accorded to the various other acts also contained within the same title.

The commissioner's order in this case was issued pursuant to the Water Pollution Control Act, one of the many acts contained in Title 22a. The plaintiff was permitted to intervene as a party in the action for an injunction brought by the commissioner solely because of the provisions of § 22a-19. That section provides that in any judicial review of an administrative proceeding, any person may intervene as a party on "the filing of a verified pleading asserting that the . . . action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

The Environmental Protection Act authorizes only limited forms of relief and encompasses injunctive and declaratory relief but not a private claim for damages. Its purpose is to give private citizens a voice in ensuring that the air, water and other natural resources of the state remain protected, preserved and enhanced, and to provide them with "an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." General Statutes § 22a-15. It, therefore, allows a member of the general public to intervene in an existing judicial review of an agency action or to initiate an inde-

pendent declaratory or injunctive action. General Statutes § 22a-19. Although intervention is allowed, it is strictly limited to the raising of environmental issues. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 490, 400 A.2d 726 (1978). By permitting such intervention, the act confers standing to private persons to bring actions to protect the environment. *Belford* v. *New Haven,* 170 Conn. 46, 54, 364 A.2d 194 (1975). "Such standing, however, is conferred *only* to protect the natural resources of the state from pollution or destruction." (Emphasis added.) Id. The legislative history of the Environmental Protection Act makes it clear that the only relief available to the intervenor in such actions is an injunction or a declaratory judgment. There can be no award of damages to the intervenor. 14 H.R. Proc., Pt. 2, 1971 Sess., pp. 739–40; see also H. Johnson, "Environmental Protection Act of 1971," 46 Conn. B.J. 422, 435 (1972).

The action for an injunction pursuant to § 22a-432 and 22a-435 is part of a statutory scheme and follows an administrative decision that a defendant is a potential polluter of the waters of the state. The injunction is mandatory when, as here, the defendant has chosen not to attack the reasonableness of the order by seeking a hearing before the commissioner. *Water Resources Commission* v. *Connecticut Sand & Stone Corporation,* 170 Conn. 27, 364 A.2d 208 (1975). Without a hearing there can be no appeal to obtain a judicial review of the order. Id., 32. For purposes of the commissioner's suit for an injunction and penalties payable to the state, the court and the commissioner are coordinate actors in the achievement of the purposes of the Water Pollution Control Act. Id., 31. Those purposes require an *expedited* hearing pursuant to General Statutes § 22a-435 and the absolute right to an injunction if the commissioner proves that the defendant has failed to comply with an order to abate pollution.

Sections 22a-432 and 22a-435 provide that the actions brought pursuant to the sections shall have precedence in the order of trial. According preferential treatment for trial is an indication that the legislature deemed it necessary to have a speedy resolution of questions of pollution. If private actions for damages were also to be resolved in the same action, the policy of a prompt resolution of the case would be hampered.[5]

Two of our recent decisions also support the conclusion that the plaintiff could not have litigated its claim for damages in the injunctive action brought by the attorney general. In *Middletown* v. *Hartford Electric Light Co.,* 192 Conn. 591, 596, 473 A.2d 787 (1984), and *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250, 470 A.2d 1214 (1984), we recognized that General Statutes § 22a-19 does *not* expand the jurisdictional authority of an administrative body acting pursuant to a separate act of title 22a to hear any and all environmental matters, but rather, limits an intervenor to the raising of those environmental matters which impact on the particular subject of the act pursuant to which the commissioner is acting. *Middletown* v. *Hartford Electic Light Co.,* supra, 597; *Connecticut Fund for the Environment, Inc.* v. *Stamford,* supra, 250–51. If an intervenor is limited to raising only those environmental matters related to the particular subject of an act, that same intervenor cer-

---

[5] The alleged damage to the plaintiff in the present case may not have been fully known at the time the commissioner brought his suit or even at the time the stipulated judgment was signed. The order issued to the defendant required compliance by April, 1983. The commissioner brought his suit for an injunction on May 20, 1983. The stipulation was signed on October 3, 1984. An affidavit submitted by the plaintiff in connection with a prejudgment remedy sought in the present case listed damages through December 31, 1984. Given this fact and the fact that a consent decree was entered into in February, 1985, by the commissioner and the defendant, it is unlikely that all of the claimed damage arising from the defendant's alleged pollution of Moody Reservoir could have been expeditiously litigated in the commissioner's action for injunctive relief.

tainly cannot be allowed to raise other issues relating to his own private cause of action. Here, the commissioner was acting pursuant to the provisions of the Water Pollution Control Act, and the intervening plaintiff was limited to raising environmental matters relating to that act. The plaintiff could not expand the scope of that action.

The plaintiff is correct in its contention that its intervention in the administrative action was limited to environmental concerns that did not encompass a claim for private damages. A "claim," within the context of an administrative agency proceeding, does not have the broad definition of a "claim" in a judicial tribunal. *Bethesda Ford, Inc.* v. *Ford Motor Co.,* 572 F. Sup. 623, 631–32 (D. Md. 1983). The usual claim in a judicial tribunal of general jurisdiction gives that tribunal comprehensive jurisdiction to adjudicate all contentions of fact and all legal theories raised by a complaint. Id. The enforcement action of the commissioner in this case involved a judicial review of an action arising out of the particular jurisdiction of the commissioner. Had the defendant sought a hearing before the commissioner pursuant to § 22a-436, the plaintiff would have been allowed to intervene under General Statutes § 22a-19. In that hearing it could not have raised its private claims. "These limitations on the authority [of the commissioner] should carry corresponding limitations on the scope of 'claims' for the purpose of the rule of claim preclusion." 2 Restatement (Second), Judgments § 83, comments.

If the plaintiff could not have raised its claim for damages at such a hearing, it could not raise them upon intervention in any appeal from the hearing by the defendant, had there been one. The plaintiff, therefore, is in no better position upon its intervention in the commissioner's suit for an injunction.

Intervention allows one who was not a party in an original action to become a party upon his request. He has a derivative role by virtue of an action already shaped by the original parties. He takes the controversy as he finds it and may not introduce his own claims to restyle the action. *Manter* v. *Manter,* 185 Conn. 502, 506, 441 A.2d 146 (1981). This is all the more true where a statute allows intervention for a specified purpose. Id.

We conclude, therefore, that the plaintiff in the present case intervened in the administrative action for the limited purpose of protecting an interest which might be affected by the granting of the injunction. It sought no more than what either the Environmental Protection Act or the Water Pollution Control Act provided. See *Dwight Building Co.* v. *Stamford House Wrecking Co.,* 193 Conn. 297, 302–304, 476 A.2d 568 (1984). Those acts are concerned with the *public* trust, and not the *private* vindication of collateral rights which might flow from the abuse of the public trust. We conclude that the plaintiff could not have interjected its claim for damages in the commissioner's suit for an injunction. The plaintiff was not precluded by the doctrine of res judicata from bringing a subsequent action for damages against the defendant. See 1 Restatement (Second), Judgments § 26 (1) (c).

## II

The defendant claims that even if the plaintiff could not have brought a claim for damages in the prior administrative action, it is nevertheless precluded from seeking damages in a subsequent action because it was a signatory to the motion for a stipulated judgment in the prior action. When parties to a lawsuit voluntarily enter into a stipulated judgment, such judgment is as conclusive as if it had been rendered upon controverted facts. *Connecticut Pharmaceutical Assn., Inc.*

v. *Milano,* 191 Conn. 555, 558, 468 A.2d 1230 (1983). Accordingly, a stipulated judgment may operate as res judicata to the same extent as a judgment after a contested trial. *Gagne* v. *Norton,* 189 Conn. 29, 31, 453 A.2d 1162 (1983); *William G. Major Construction Co.* v. *DeMichely,* 166 Conn. 368, 375, 349 A.2d 827 (1974); *Bryan* v. *Reynolds,* 143 Conn. 456, 460–61, 123 A.2d 192 (1956); *Owsiejko* v. *American Hardware Corporation,* 137 Conn. 185, 187–88, 75 A.2d 404 (1950); annot., 91 A.L.R.3d 1170, 1173–74.

The motion for the stipulated judgment in this case begins with the words: "The plaintiff Commissioner of Environmental Protection and the defendant Foresite Builders [Roland Beausoleil d/b/a Foresite Builders] hereby stipulate to a judgment as follows . . . ." The plaintiff signed the motion as the intervening plaintiff.

In order to determine what litigation the plaintiff was precluded from pursuing after it had signed the stipulation, we must first determine the true scope of the agreement. *Gagne* v. *Norton,* supra, 34–35. The terms of a stipulated judgment "may not be extended beyond the agreement entered into." *Owsiejko* v. *American Hardware Corporation,* supra, 187–88. It is usually presumed, however, "that the parties intended to settle all aspects of the controversy, *including all issues raised by the papers comprising the record."* (Emphasis added.) *Gagne* v. *Norton,* supra, 34.

A review of the stipulated judgment in the present case indicates that the plaintiff, by signing the stipulation, was only bound with respect to the way in which the defendant should take measures to control and abate pollution and erosion, and the time by which the defendant should effectuate such measures. Neither the commissioner nor the plaintiff sought or claimed damages arising from the acts of the defendant. The issue of damages, therefore, was never raised by any papers

comprising the record. Cf. *Gagne* v. *Norton,* supra. The present action involving the plaintiff's claim of damages was not within the scope of either the complaint or the stipulated judgment of the prior action.

The defendant claims that the plaintiff should be barred from bringing a suit for damages because it failed expressly to reserve the right to bring a second action even when not all of those matters could have been combined in the first action. The defendant alleges that the parties *could* have stipulated to damages even though the court could not have granted damages, and that because the plaintiff failed to reserve such a claim, it is now precluded from doing so. Cf. *Parks* v. *Pavkovic,* 753`F.2d 1397, 1404 (7th Cir. 1985). The defendant relies upon the case of *Gagne* v. *Norton,* supra, as support for his claim. We agree, however, with the plaintiff's claim that the holding in *Gagne* does not apply to this case.

In *Gagne* v. *Norton,* supra, we held that an administrative appeal brought by the plaintiff to obtain public assistance benefits was barred by the operation of the doctrine of res judicata because the parties had entered into a consent decree in a prior federal action which involved similar factual claims. The federal suit was a class action, seeking declaratory and injunctive relief, as well as retroactive monetary relief. The case was not actually litigated because the parties entered into a consent decree which granted the plaintiff and the members of the class an increase in transportation expenses. No retroactive damages were awarded in that decree nor did the plaintiff reserve a claim as to such damages. The allegations of both suits were nearly identical. Although the federal court could not have awarded any monetary relief because the eleventh amendment to the constitution of the United States prevented that court from rendering judgment for damages against the state, *Gagne* rejected the plaintiff's

argument that she was not precluded from later seeking monetary relief in the state's courts. This court, instead, held that it should be presumed that the parties intended by the consent decree to settle the *entire* controversy, including the claim for retroactive damages, unless extrinsic evidence showed that the intent of the parties was to agree otherwise.

The differences between that case and this case are several. In the former, monetary relief was sought in both the first and second actions. In this case, monetary relief was *not* sought in the first case by either the intervening plaintiff or the primary plaintiff, although the state did seek a penalty. Moreover, in *Gagne,* the consent decree was signed by all the parties; in this case the stipulation was between the commissioner and the defendant, and was merely *endorsed* by the signature of the plaintiff. The plaintiff did not sign the subsequent consent decree. Furthermore, in *Gagne,* both cases involved the same parties; in this case, the plaintiff intervened in the first action for the limited purpose stated in its motion to intervene. In *Gagne,* it was assumed that the plaintiff could have received monetary benefits in the state courts had she sought them in a state action prior to the signing of a consent decree in the federal court. In this case, the plaintiff could *not* have been awarded damages in the state action brought by the commissioner. Finally, in *Gagne,* the plaintiff framed the claims in the first action. In this case, the commissioner framed the claims. We hold, therefore, that the trial court could not assume that the parties intended to resolve any claim for damages in the stipulated judgment, and that the plaintiff was not precluded from pursuing such a claim in a subsequent action.

There is error, the judgment is set aside and the case is remanded for further proceedings.

In this opinion the other justices concurred.